**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

STEVEN VOLKSWAGEN, INC. *d/b/a Steven Infiniti*,

      Plaintiff,

      v.

ZURICH AMERICAN INSURANCE COMPANY,

      Defendant,

Case No. 19-1161-JWB-ADM

---

**MEMORANDUM AND ORDER**

      This matter comes before the court on Defendant's Motion to Compel Full Dealer Jackets (ECF No. 71). Defendant Zurich American Insurance Company ("Zurich") seeks to compel Plaintiff Steven Volkswagen, Inc. to produce full and unredacted copies of the "dealer jackets"— a term of art in the auto industry for a folder containing all documents relating to the purchase and sale of a vehicle, including purchasers' identifying information. Zurich contends that information about the subject vehicles' sales prices are relevant to the issue of whether Zurich properly adjusted the dealership's claims for wind damage to its inventory. The dealer jackets also contain purchasers' identifying information, and Zurich requests that the court impose no restrictions on its ability to contact those individuals. Steven Volkswagen ("Steven") opposes the motion, arguing that full dealer jackets are not relevant, including the customer information. If the court orders production of the full dealer jackets, Steven asks that that the court allow it to redact the purchasers' contact information, which the court construes as a motion for a protective order. For the reasons stated below, both motions are granted in part and denied in part.

# I.    BACKGROUND

According to Steven's amended complaint, Steven is a franchisee auto dealership for new Volkswagen and Infiniti vehicles, and used vehicles in general.  (ECF No. 12 ¶ 5.)   Zurich issued the policy that covers Steven's vehicle inventory, which suffered a loss due to wind damage on February 23, 2019.  (*Id.* ¶¶ 7-8.)  Zurich issued payments in the amounts of $260,001.16 and $215,342.28.  (*Id.* ¶¶ 10-11.)   But, according to Steven, the damage to the 139 new and used Volkswagen inventory vehicles exceeded of $500,000, and the damage to the 72 new and used Infiniti inventory vehicles exceeded $600,000.  (*Id.* ¶ 13.)  Steven contends that the way Zurich adjusted the claims is essentially illegal because it would violate federal safety regulations, void manufacturer warranties, and compel Steven to issue disclaimers to purchasers, which would substantially decrease the selling price of the vehicles and cause Steven even further loss.  (*Id.* ¶ 14.)  Steven also contends that Zurich used an improper methodology to adjust the claims.  (*Id.* ¶¶ 20-21.)  Steven claims Zurich breached the terms of its insurance policy and the implied covenant of good faith by using an improper method to adjust Steven's claims.  Zurich disputes the nature and extent of the wind damage and asserts that it properly adjusted the claims, if not over-valued them.  (*See generally* ECF No. 13.)

Zurich's Request for Production ("RFP") No. 40 seeks production of the dealer jacket for each of the vehicles at issue.  (ECF No. 72-2, at 34.)  Steven did not timely respond to the discovery requests, including RFP No. 40.  At a discovery conference on September 27, the court ordered Steven to serve responses to all outstanding written discovery and to substantially complete document production by October 4.  (ECF No. 33, at 2.)   At the discovery conference, the undersigned reserved ruling on the issue of whether Steven had waived any objections by not timely asserting them.  According to Zurich, Steven did not serve its responses until October 7,

and, when Steven did so, it produced only the front of the dealer jackets but not the back or the documents contained within the dealer jackets. Steven also redacted all customer information from the dealer jackets. Steven's responses did not lodge any objections. (ECF No. 72-3, at 15.) During the parties' meet and confers, Steven told Zurich that it disagreed that full dealer jackets were relevant. The court held another discovery conference regarding this dispute and ordered briefing. (ECF No. 58.)

It also bears noting that, although Steven did not produce complete copies of the dealer jackets, it referenced them as responsive to Interrogatory No. 5, which required Steven to identify all documents associated with the sale of impacted vehicles; and other RFPs that sought documents prepared by Steven pertaining to the vehicles, the sales notes for each vehicle, and documents relating to Steven's sale of the vehicles. (ECF No. 72-3, at 12, 16, 17, 30, at RFP Nos. 29, 44, and 47.) Zurich states that at subsequent depositions of various "plaintiff parties" between October 28 and November 1, the deponents testified that Steven employees discussed storm damage with customers during the sale and had purchasers inspect the vehicles and sign storm disclosure forms.

## II.    ZURICH'S MOTION TO COMPEL

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). In other words, considerations of both relevance and proportionality now expressly govern the scope of discovery. FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment. Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (applying *Oppenheimer* after the 2015

amendment); *see also Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 469 (D.N.M. 2018) (analyzing the 2015 amendment and concluding that it did not change discovery's scope but clarified it, and therefore *Oppenheimer* still applies).

When a responding party fails to make a disclosure or permit discovery, FED. R. CIV. P. 37(a) permits the discovering party to file a motion to compel. The party seeking discovery bears the initial burden to establish relevance, but it does not bear the burden to address all proportionality considerations. *See Landry v. Swire Oilfield Servs.*, L.L.C., 323 F.R.D. 360 (D.N.M. 2018) (discussing the effect of the 2015 amendment on the party seeking discovery); *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003) (stating the moving party bears the initial burden to demonstrate relevance); *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) ("Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case."); FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment (noting that the amendment "does not place on the party seeking discovery the burden of addressing all proportionality considerations" and that "the parties' responsibilities [on a discovery motion] would remain the same as they have been").

Relevance, however, is often apparent on the face of the request. *See Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 652–53 (D. Kan. 2006). When the discovery sought appears relevant on its face, or the discovering party has established relevance, the party resisting discovery bears the burden to support its objections. *See Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 624 (D. Kan. 2014) (holding the party resisting discovery bears the burden to show why a discovery request is improper); *Martin K. Eby Const. Co. v. OneBeacon Ins. Co.*, No. 08-1250-MLB-KGG, 2012 WL 1080801, at *3 (D. Kan. Mar. 29, 2012) ("Once this *low* burden of relevance

is established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request." (emphasis supplied)).  The party resisting discovery does not carry this burden by asserting "conclusory or boilerplate objections that discovery requests are irrelevant, immaterial, unduly burdensome, or overly broad."  *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670 (D. Kan. 2004).  Rather, an objecting party "must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable."  *Id.* at 670-71.

When ruling on a motion to compel, the court considers only those objections initially asserted in response to the discovery request and relied upon in response to the motion.  *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1256 (D. Kan. 2008).  Objections not initially raised in response to a discovery request are generally deemed waived absent a showing of good cause.  *Id.*; *see also Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473, 22 Fed. R. Serv. 3d 703 (9th Cir. 1992) ("It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection."); *Marx v. Kelly, Hart & Hallman, P.C.*, 929 F.2d 8, 12, 19 Fed. R. Serv. 3d 166 (1st Cir. 1991) ("If the responding party fails to make a timely objection, or fails to state the reason for an objection, he may be held to have waived any or all of his objections.").

### 1.  Steven waived its relevance objection.

Steven waived its relevance objection to RFP No. 40 by not timely asserting it and by not establishing good cause for the court to excuse that failure.  Steven did not timely respond to Zurich's RFPs by September 19, which was the date the responses were due.  The court is not eager to rely on a technical waiver argument to avoid ruling on a real substantive discovery dispute,

so the court gave Steven numerous opportunities to properly assert any objections. For example, at the discovery conference on September 27, the court withheld ruling on the issue of waiver and ordered Steven to serve responses by October 4. According to Zurich, Steven did not comply with this deadline either, but instead served its responses on October 7. Even then, Steven did not assert any objections in response to RFP No. 40. Nor did Steven assert any objections to other discovery responses to which the full dealer jackets were responsive—namely, Interrogatory No. 5 and RFP Nos. 29, 44, and 47.

This is problematic as a practical matter because it is not merely the lack of an objection, but more importantly because Steven's cryptic responses deprived Zurich of fair notice about the extent to which Steven was withholding responsive information. In 2015, the Federal Rules were amended to require any response to an RFP to state the extent to which the responding party is withholding responsive materials based on an objection. FED. R. CIV. P. 34(b)(2)(C). This amendment was "intended to end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections." FED. R. CIV. P. 34 advisory committee notes to the 2015 amendments. Here, Steven's responses failed to comply with this rule. Instead, Zurich became aware of Steven's belated relevance objection only through the parties meet-and-confer efforts.

Even now, Zurich's opening brief set out the above timeline in support of its argument that Steven waived its relevance objection. Steven's response does not address this waiver argument, much less attempt to demonstrate good cause for the untimely objection. Steven's relevance objection is therefore waived.

## 2. The dealer jackets are relevant.

But even if the court considers the merits of Steven's relevance objection, the court would still overrule it. The policy's windstorm/hail deductible allows Zurich to adjust a wind storm loss based on the lesser of the actual cost or the cost of repair and replacement. (ECF No. 72, at 8; ECF No. 72-1.) Here, Steven did not repair the vehicles, so the "actual cost" could include any discounts given to purchasers for wind storm damage. Additionally, Zurich argues that some of the affected vehicles sustained damage in several storms over the span of years, and the full dealer jackets would assist Zurich in identifying damage that contributed to the 2019 claim and could enable Zurich to evaluate necessary repairs or replacement parts pursuant to the policy.[1]

In response, Steven argues the subject policy provides coverage for the lesser of: (1) actual cash value of the damaged vehicle as of the time of the loss; or (2) the cost of repairing or replacing the damaged vehicle with other property of like kind and quality. (ECF No. 91, at 2.) In other words, Steven argues the information is not relevant because it disagrees with Zurich's policy interpretation.

The issue before the court at this procedural juncture is not whether Zurich's policy interpretation is accurate or which party will ultimately prevail on its interpretation. It is sufficient that Zurich has shown that the dealer jackets are relevant to its theory of the case—that valuing Steven's actual loss may include any discounts off of vehicle purchase price for wind damage, and

---

[1] Zurich also contends that the purchasers' information contained within the dealer jackets is relevant because the purchasers' understanding and interpretation of the damage to the vehicle is relevant to the extent of wind damage alleged by Steven. The purchasers' understanding of the damage is not contained within the dealer jackets. Rather, the dealer jackets contain information that would enable Zurich to contact the purchasers to potentially obtain this information. This topic is more appropriately addressed in the context of Steven's motion for a protective order restricting disclosure of purchasers' names and contact information.

the dealer jackets may enable Zurich to determine whether the vehicles were previously damaged in other storms. Moreover, Steven has separately identified the dealer jackets as responsive to interrogatories and other requests for production. For these reasons, the court grants Zurich's motion to compel insofar as the court orders Steven to produce the full dealer jackets subject to certain limitations set forth in more detail below.

## III.    STEVEN'S MOTION FOR A PROTECTIVE ORDER

For good cause, the court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). "The 'good cause' standard of Rule 26(c) is highly flexible, having been designed to accommodate all relevant interests as they arise." *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008) (internal quotation marks omitted). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

Steven essentially moves for a protective order to shield from Zurich discovering the "names, addresses and phone numbers of the vehicle purchasers." (ECF No. 91, at 4.) During the discovery conference with the court, Steven expressed concern that Zurich would contact the vehicle purchasers to inform them about the amount Steven received in insurance proceeds and ask the purchasers whether they received a commensurate adjustment in the purchase price. Steven states that it is willing to stipulate that it made no repairs to any of the damaged vehicles and that every vehicle was sold at a price that exceeded the cost of the vehicle reduced by insurance recovery. In other words, purchasers did not get a dollar-for-dollar discount on the purchase price of the vehicle. Although Zurich argues that this explanation does not constitute a particular and specific demonstration of fact that supports good cause, the court disagrees. The potential harm is

obvious on its face: an auto dealership's insurer is seeking to contact a significant number of the dealership's clients to inquire about the auto insurer's negotiations with these individuals. It is not difficult to imagine that these clients may be left with the impression that the dealership profited from insurance proceeds at their expense, thus damaging Steven's reputation.

Zurich notes that it paid between $8,000 to $10,000 per vehicle for several vehicles, but Steven contends that additional damages are still due on those vehicles. Because of this, Zurich argues that it is entitled to know whether this information is being communicated to the purchasers; what the purchasers learned about the damage and amount of damages when the purchasers were inspecting the vehicles, including whether the damage was noticeable and pointed out by a sales representative. Zurich also contends that it is entitled to know what the customers' understanding was regarding the wind damage found and paid by Zurich. Zurich's reply brief further reiterates that the purchasers "are in a prime position to confirm the extent of the wind damage to the vehicles, if any." (ECF No. 102, at 4.)

The court agrees that the customers' perception of the extent of the damage appears at least potentially relevant in that it would tend to support or negate how Zurich adjusted a claim on that particular vehicle. However, a lay purchaser's interpretation of vehicle damage may or may not be accurate, and so the court does not find this proffered statement of relevance very persuasive. Zurich has not specifically connected the dots with the remainder of the proposed areas of inquiry to the claims and defenses in this case. For example, it is unclear why it is relevant whether sales representatives pointed out the damage to purchasers or what the purchasers' understanding was regarding "wind damage already found (and later paid) by Zurich," particularly when Steven has offered to stipulate that it did not give purchasers a dollar-for-dollar discount. These types of inquiries appear potentially harassing and harmful to Steven's business because it appears that

Zurich is essentially proposing to purchasers that Steven received insurance proceeds that were not passed along to the purchasers in the form of discounts.

Balancing the potential relevance of the discovery to the harm to Steven, the grants in part Steven's motion for a protective order insofar as Steven may redact the purchasers' names, phone numbers, addresses, and any other identifying information on the dealer jackets. The court is persuaded that the practical burdens imposed by giving Zurich carte blanche to contact Steven's customers in this fashion significantly outweighs the anticipated benefits Zurich seeks to gain with the proposed discovery, which appear to be relatively marginal based on the present record. Zurich should be able to get most of the information it seeks from Steven itself, including perhaps via the full dealer jackets. However, allowing Zurich to contact a smaller sample of customers does not carry with it the same large-scale risks to Steven's reputation. The court will therefore allow Zurich a limited scope of customers for whom Steven must disclose contact information. To the extent that Zurich contacts these customers, the court limits Zurich's topics of inquiry as set forth below.

## IV. CONCLUSION

The parties' motions are granted in part and denied in part. By **December 4, 2019**, Steven shall produce full copies of the dealer jackets, but the court grants Steven leave to redact purchasers' names, phone numbers, addresses, and any other identifying information. By **December 9, 2019**, Zurich may select up to five (5) purchasers for whom Steven shall produce all identifying information contained in the dealer jacket by **December 12, 2019**.

To the extent that Zurich contacts these customers, Zurich may attempt to determine the purchasers' understanding and interpretation of the damage to the vehicle at issue, as well as whether and to what extent the purchasers negotiated discounts based on the damage. However,

Zurich shall not disclose to the purchasers how Zurich adjusted the claims on those vehicles, the amount of payment Steven received from Zurich on any particular vehicle or in total, and Zurich may not suggest that insurance proceeds exceeded any discount on purchase price. Zurich shall not disparage Steven.[2] Zurich may request a discovery conference with the undersigned if it seeks additional identifying information of purchasers, but it should be prepared to demonstrate that the information provided from the sampling of purchasers is highly relevant and unavailable from other sources.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel Full Dealer Jackets (ECF No. 71) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Steven's motion for a protective order (ECF Nos. 91, 107) is granted in part and denied in part.

**IT IS SO ORDERED.**

Dated November 25, 2019, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge

---

[2] Zurich's reply stipulates that it will not make any disparaging remarks about Steven or discuss how much Zurich paid in insurance proceeds on each vehicle.