IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEVEN VOLKSWAGEN, INC. and
STEVEN VOLKSWAGEN, INC. d/b/a
STEVEN INFINITI,

          Plaintiffs,

v.                                             Case No. 19-1161-JWB

ZURICH AMERICAN INSURANCE
COMPANY,

          Defendant.

## MEMORANDUM AND ORDER

This matter is before the court on Defendant's motion for summary judgment (Doc. 155.) The motion is fully briefed and is ripe for review.  (Docs. 156, 161, 170.)  For the reasons stated herein, the motion for summary judgment is GRANTED.

### I.  Facts

In keeping with the standards governing summary judgment, the following statement of facts views the evidence, and all reasonable inferences therefrom, in the light most favorable to Plaintiff, the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (evidence is viewed in the light most favorable to the non-moving party because credibility determinations, weighing conflicting evidence, and drawing appropriate inferences are jury rather than judge functions).

During the time period at issue, Defendant Zurich American Insurance Company issued policies to Infiniti Financial Services and Nissan Motor Acceptance Corporation, and their respective divisions.  Plaintiffs Steven Volkswagen and Steven Infiniti, car dealerships in Wichita,

Kansas, were additional insureds under the policies.  On February 23, 2019, Plaintiffs' vehicle inventory consisted of new and used Volkswagens and Infinitis.  On that date, Plaintiffs suffered a loss due to a windstorm.  On March 6, 2019, Plaintiffs submitted claims to Defendant for the losses which involved 79 new Volkswagens, 60 used Volkswagens, 56 new Infinitis, and 16 used Infinitis.  On that same day, Defendant sent an independent adjuster to assess the alleged damage on the vehicles.  Nearly all alleged damage was determined to be microscopic.  Defendant issued two checks totaling $475,343.44 to Plaintiffs for the claims.  In paying the claims, Defendant paid the lesser of either the repair or replacement cost of the damaged vehicles.  (Docs. 154 at 2; 156 at 3-4; 161 at 2.)

Plaintiffs filed this suit alleging that Defendant breached the contracts and its duty to act in good faith by paying the cost to repair instead of the replacement cost of the headlights, taillights, and wheels ("the parts at issue").  The other damaged parts that were part of the claims are not at issue in this case.  Plaintiffs do not dispute the extent, or the amount of, physical damages determined by the independent adjuster.  Rather, Plaintiffs contend that they should be paid for the replacement cost of the parts at issue.  The policies at issue are identical with respect to the language regarding wind damage to a vehicle.  The relevant language is as follows:

F. Physical Damage Coverage
 1. Coverage
 a. We Will pay for "loss" to a covered "auto" or its equipment under:

 * * *

 (2) Specified Causes Of Loss Coverage Caused by:

* * *

 (c) Windstorm, hail or earthquake;

* * *

3. Exclusions

 * * *

 d. We will not pay for:
 (1) Your expected profit, including loss of market value or resale value.

* * *

4. Limits of Insurance
 a. The most we will pay for:
(1) "Loss" to any one covered "auto" is the lesser of:
(a) The actual cash value of the damaged or stolen property as of the time of "loss" or
(b) The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

* * *

Windstorm/Hail Deductible

* * *

A. For all "loss" arising from windstorm or hail, Section 1-CoveredAuto Coverages, Paragraph a. of F.4 Limits Of Insurance is replaced by the following:
4. Limits Of Insurance
a. The most we will pay for:
(1) "Loss" to any one covered "auto" is the least of:
(a) Your actual cost, exclusive of your profit, holdback, or overhead expense;
(b) The cost of repairing or replacing the damaged property with other property of like kind and quality;
(c) The cost of repairing the damaged property at a facility not owned or affiliated with you; or
(d) For all repairs performed by you, 75% of your normal retail charges for parts, materials, and labor supplied or performed by you. However, we will pay the actual expenses you incur for that portion of the repairs that are made using a paintless dent repair method.

(Doc. 156, Exh. A, Mason Aff. Exh. 1, Policy No. 1150706, at ZAIC000024-26, 000048.)

It is undisputed that the claims submitted are subject to the policies' provisions regarding

the windstorm/hail deductible.  Plaintiffs contend that they are owed an additional $525,120.01 in

damages on the claims.  This additional amount is alleged to be the cost of the replacement for the

parts at issue.  Plaintiffs did not obtain an expert to perform an independent evaluation of the damages to the vehicles.  Plaintiffs also did not have an independent assessment of the cost of replacement or repair to the damages on the vehicles.  Plaintiffs have included a spreadsheet which details the calculation for payment of the claims based on the cost of replacing the parts at issue and an adjustment of the salvage value.  (Docs. 156 at 4-6; 161 at 2-3, Exh. A.)

Plaintiffs' position in this case is that Defendant should pay the claims based on the actual cash value of the parts at issue even though that amount is clearly higher than the repair cost.  In support of that position, Plaintiffs included several statements of facts that were supported by an affidavit of Harold Johnson, Plaintiffs' chief financial officer.  Defendant moves to strike almost all of the statements in the affidavit on the basis that they are improper expert opinion or not based on personal knowledge.  (Doc. 168.)

Pursuant to Fed. R. Civ. P. 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  In response to the motion to strike, Plaintiffs state that they are not utilizing an expert in this case and that "all of Harold Johnson's testimony relates to the mathematical computation of the loss adjustment." (Doc. 171 at 1.)  Plaintiffs further state that the numbers utilized by Johnson are the same numbers that Defendant used.  Plaintiffs offer no further position on any specific statements set forth in Johnson's affidavit.  Therefore, because Johnson is not offering expert testimony on any issue, in addition to a showing of personal knowledge, any opinion testimony must be admissible under Fed. R. Evid. 701 which requires it to be based on his perception, helpful to the jury, and not based on scientific or technical knowledge within the scope of Rule 702.  Under that Rule, courts have allowed an officer of the business to testify about financial matters without requiring that officer

4

to be an expert. *Ryan Dev. Co., L.C. v. Indiana Lumbermens Mut. Ins. Co*., 711 F.3d 1165, 1170 (10th Cir. 2013) (citing Fed. R. Evid. 701 advisory committee notes)). "Rule 701 allows lay witnesses to offer 'observations that are common enough and require a limited amount of expertise, if any.'" *Id.* (quotation omitted).

When an affidavit fails to comply with Rule 56, it is subject to a motion to strike. *Radiologix, Inc. v. Radiology & Nuclear Med., LLC*, No. 15-4927-DDC-KGS, 2017 WL 5007143, at *2 (D. Kan. Nov. 2, 2017) (citing *Noblett v. Gen. Elec. Credit Corp*., 400 F.2d 442, 445 (10th Cir. 1968) and Fed. R. Civ. P. 56(e)). Recently, however, our court has simply disregarded the portions of the affidavit that are not based on personal knowledge or admissible evidence. *Id.* "Instead of striking an affidavit, the better approach is for the court to consider each affidavit and, to the extent it may assert a fact which is not admissible evidence, simply exclude the requested fact from the court's ultimate findings." *Id.* Therefore, the court will address the relevant statements in the affidavit and determine whether they are admissible. Inadmissible evidence will be disregarded.

In Johnson's affidavit, he states that he is the chief financial officer of Plaintiffs' dealerships. In that role, he is responsible for the "preparation of dealership financial statements, accounts receivable, accounts payable, bank reconciliations, interface with financial institutions, floor plan monitoring and maintenance, and inventory control." (Doc. 161, Exh. A at 1.) Johnson's affidavit does not state that he is the person who prepares and handles claims for insurance although as the chief financial officer it may be inferred that he has some role, at least in the financial calculations he has prepared. The affidavit does state that he performed the assessment of the monetary losses, which is the calculation of the damages at $525,120.01. Although Defendant challenges the calculation of damages, the court finds that Johnson's affidavit

provides personal knowledge for those calculations and, in his role for Plaintiff, he would have familiarity with the financial aspect of losses to the dealerships.

The affidavit also includes numerous references to a claim made under the policies in 2018. For instance, Johnson states that "Defendant's representative adjusted the claims pursuant to the policy language as the wind damage adjustment in 2019 was totally inconsistent with the wind damage adjustment in 2018 even though the terms of policy were precisely the same." (*Id.*) Johnson also states that "Defendant adjusted the 2018 wind damage casualty loss consistent with an [Actual Cash Value] ACV policy." (*Id.* at 2.)  Johnson, however, provides no basis for these statements.  Johnson does not provide any background information regarding the 2018 claim.  For example, he does not state that he submitted the claim or that he reviewed the same, or whether the cost of repair was less than the cost of the replacement parts for the vehicles involved in the 2018 claim.  Essentially, the affidavit provides no information that would support a finding that Johnson has personal knowledge regarding the 2018 claim and how Defendant handled that claim. *Pack v. Hickey*, 776 F. App'x 549, 555 (10th Cir. 2019) (corporate officer must include statement that includes the nature of his participation in the contested matter).  Therefore, the statements in Johnson's affidavit regarding the 2018 claim are inadmissible.

Johnson also states that the policies at issue are ACV policies.  This is not a statement of fact but rather a conclusion of law.  The court will disregard this statement.  Johnson also makes several statements regarding Defendant's actions in evaluating the 2019 claims.  Again, Johnson does not identify how he has personal knowledge about Defendant's evaluation of the 2019 claims. For example, Johnson states that "initially the Defendant adjusted the 2019 wind damage claim consistent with an ACV policy but later changed to an Economic Loss Policy Adjustment" and that the "2019 wind damage casualty loss was initially adjusted consistent with the 2018 wind

damage casualty loss but apparently the loss was 'too high' for the Defendant so the Defendant sought to reduce it."  (Doc. 161, Exh. A at 2.)  Johnson's affidavit does not support a finding that he has personal knowledge as to Defendant's claims adjustment procedure.   Therefore, the statements in the affidavit regarding Defendant's decisions during the adjustment of the 2019 claims are inadmissible.[1]

Finally, Johnson's affidavit takes issue with the repair calculation on the basis that the proposed repair, which is a "buff job" on the headlamps/taillamps, is an illegal repair.  Johnson states that the buff jobs are 1) not sanctioned or approved by the manufacturer; 2) void the vehicle warranty as to that part and 3) are illegal under Kansas law.  Again, Johnson makes no attempt to show how he has personal knowledge of these statements.  Although Johnson identified several areas of his expertise, Johnson did not state that he has experience or knowledge regarding what repairs to vehicles are sanctioned or approved by the manufacture or whether Johnson has knowledge of the vehicles' warranties.  *Pack*, 776 F. App'x at 555 (affidavit devoid of indication that affiant was personally involved with subjects at issue in affidavit).  Moreover, Johnson's blanket statement that the buff jobs are illegal under Kansas law also lacks personal knowledge.  Johnson wholly fails to identify what Kansas law prohibits a buff job on a vehicle's taillights.  Therefore, these statements are inadmissible.  *Id.*; Rule 56(c)(4).

Defendant has moved for summary judgment on both claims.

## II.  Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R.

---

[1] Even if the court credited these statements as admissible facts, it would not create a genuine dispute of material fact as the court has determined that the policies are unambiguous and Defendant has not breached the contracts in its handling of the 2019 claims.

Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Sotunde v. Safeway, Inc.*, 716 F. App'x 758, 761 (10th Cir. 2017). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol—Myers Squibb Co*., 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The nonmovant must then bring forth specific facts showing a genuine issue for trial. *Id*. The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

### III. Analysis

### A. Breach of Contract

The parties agree that the policies and Kansas law govern this action. In this case, the parties present conflicting positions on the interpretation of the terms in the policy. The interpretation of the policy is a question of law for this court. *See First Fin. Ins. Co. v. Bugg*, 265 Kan. 690, 694, 962 P.2d 515, 519 (1998). In construing the policy, the court should consider the policy as a whole and construe it in a way that will give effect to the parties' intent. *Am. Family Mut. Ins. Co. v. Wilkins*, 285 Kan. 1054, 1058, 179 P.3d 1104, 1109 (2008). If the policy language is unambiguous, the court must take the unambiguous language "in its plain, ordinary, and popular sense." *Id.* If language in the policy is ambiguous, the court construes terms in favor of the insured. *Id.*

"The test in determining whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean." *Id.* at 1110. "Where a contract is complete and unambiguous on its face, the

court must determine the parties' intent from the four corners of the document, without regard to extrinsic or parole evidence." *Kay–Cee Enter., Inc. v. Amoco Oil Co.,* 45 F. Supp.2d 840, 843 (D. Kan. 1999) (citing *Simon v. Nat'l Farmers Org., Inc*., 250 Kan. 676, 829 P.2d 884, 887–88 (1992)).

Turning to the language in the policies, the windstorm/hail deductible endorsement states that "the most" Defendant will pay for property damage due to windstorm or hail is

> the least of:
> (a) Your actual cost, exclusive of your profit, holdback, or overhead expense;
> (b) The cost of repairing or replacing the damaged property with other property of like kind and quality;
> (c) The cost of repairing the damaged property at a facility not owned or affiliated with you; or
> (d) For all repairs performed by you, 75% of your normal retail charges for parts, materials, and labor supplied or performed by you. However, we will pay the actual expenses you incur for that portion of the repairs that are made using a paintless dent repair method.

(Doc. 156, Exh. A, Mason Aff. Exh. 1, Policy No. 1150706, at ZAIC000024-26, 000048.)  The plain language of the quoted provision indicates Defendant's limit of liability in this situation is the least of the four options under subparagraphs (a) through (d).  However, Plaintiffs stipulated that they did not perform any repairs or replacements of the damaged parts, nor do they intend to. That leaves subparagraph (b) as the only provision at issue, since subparagraphs (a) and (d) contemplate an actual repair or other expenditure, and neither party suggests the value of repair or replacement at another facility (as contemplated under subparagraph (c)) is at issue in this case.

Defendant argues that the policies are unambiguous and that it is entitled to pay the least of the repair or replacement costs contemplated under subparagraph (b).  (Doc. 155 at 11.) However, that provision does not expressly address how to determine whether repair or replacement is appropriate.  Nevertheless, Section IV.A.4.a of the policies states that, with respect to physical damage coverage, Defendant has the option to "[p]ay for, repair or replace damaged or

stolen property." (Doc. 156, Exh. A, Mason Aff. Exh. 1, Policy No. 1150706, at ZAIC000039.) Moreover, under Kansas law, a provision like that contained in subparagraph (b) provides the insurer with an election to repair or replace. *See Venable v. Imp. Volkswagen, Inc.*, 214 Kan. 43, 47–48, 519 P.2d 667, 672 (1974) (interpreting provisions regarding limits of liability in which the insurer could pay for the loss or to repair or replace the property); *see also Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 901-02 (10th Cir. 2006) (applying Colorado law) (insurer could repair or replace, and liability was limited to the lower of the actual cash value or cost of repair or replacement). Accordingly, the plain language of the insurance policies allows Defendant to determine whether repair or replacement of the damaged property provides the appropriate measure of loss.

The parties do not dispute that the damage to the parts at issue is minimal. Defendant has paid the cost to repair the parts at issue after determining that repairing the parts was less than replacing the parts, which, according to Plaintiffs, is approximately $2,000 each. (Doc. 156, Exh. A.)

In response, Plaintiffs also contend that the language at issue is unambiguous. Astonishingly, however, after providing a fairly comprehensive summary of applicable Kansas law on interpreting contracts, Plaintiffs fail to address a single provision from the actual insurance contracts. Instead, Plaintiffs argue that the contract was interpreted "by the Defendant in adjusting the 2018 wind damage claim. The Defendant should not be allowed to 'change the terms' of the Contract unilaterally to reduce the Defendant's exposure to covering the losses of the Plaintiff[s]." (Doc. 161 at 10.) The court construes Plaintiffs' argument to be that Defendant previously adjusted the 2018 wind loss by paying for the replacement costs of the parts, so Defendant cannot now argue that the policies allow it to pay the lesser of the cost of replacement or repair.

Plaintiffs' legal argument is based on the parties' course of performance of the underlying contracts.  Course of performance of a particular contract can help establish the parties' interpretation of ambiguous contract terms.  *Farrell v. Gen. Motors Corp*., 249 Kan. 231, 241, 815 P.2d 538, 546 (1991).  However, Plaintiffs maintain that the contracts are unambiguous, and the court agrees.  Accordingly, the court is bound to interpret the contracts according to their unambiguous terms, without regard to how the parties may have interpreted them on prior occasions.  *See Penncro Assocs., Inc. v. Sprint Spectrum, L.P*., 499 F.3d 1151, 1155 (10th Cir. 2007) (citing *Farrell*, 815 P.2d at 546).  Moreover, in order for the parties' prior course of performance to be meaningfully evaluated in the context of the current claim, the court would need to hear evidence on the similarities or differences between the physical damage sustained by Plaintiffs' vehicles in the 2018 windstorm and the 2019 windstorm.  It could be that the damage sustained in the earlier event was more significant than that suffered in the 2019 storm such that replacement was appropriate in the 2018 claim while repairs were feasible in the 2019 claim.  However, Plaintiffs have utterly failed to put forth any evidence on this topic.  Thus, if the parties' course of performance was relevant, which it is not due to lack of ambiguity in the contract terms, Plaintiffs would fare no better.

In sum, Plaintiffs have wholly failed to discuss the policies' language in their brief in order to explain how that language should apply to the 2019 claims.  The policies clearly provide that Defendant can pay the lesser of the replacement cost or repair.  That is exactly what Defendant did in this case.[2]

---

[2] Moreover, changes to the policies' terms can only be made by an endorsement issued by Defendant.  (*See* Doc. 156, Exh. A, Mason Aff. Exh. 1 at ZAIC00012, 0101.)  As such, there could not be a modification to the terms through the course of performance.  *Penncro Assocs*., 499 F.3d at 1159.

Plaintiffs further argue that Defendant breached the contract by using an "exaggerated salvage value." (Doc. 161 at 10.)  But Plaintiffs have failed to point to a term in the policies which addresses any use of salvage value.  As set forth in the facts, the policies do not require Defendant to pay the loss of market value.  Plaintiffs also argue that Defendant failed to negotiate the salvage value.  (*Id.*)  Again, Plaintiffs do not point to any provision in the policies which would require them to negotiate the salvage value calculation.  Ultimately, any disputes over the amount and propriety of using any particular salvage value would require evidence to establish what that value should be, which evidence would probably require expert testimony.  Plaintiff has put forth no evidence on that topic other than Harold Johnson's conclusory statements that Defendant should have used the same salvage value that it used in the 2018 wind claim.  Finally, Plaintiffs argue that the buff job was illegal and would void the manufacturers' warranties on the vehicles.  Plaintiffs, however, have failed to offer any admissible evidence regarding these claims.  Moreover, Plaintiffs do not cite to any authority that a buff job on a headlight is illegal under a Kansas law or regulation nor do they cite to the manufacturers' warranties in support of their positions.

Because the policies at issue unambiguously provide that Defendant can pay the lesser of the replacement cost or repair cost and does not have to pay for expected profit, including loss of market value, Defendant's motion for summary judgment on Plaintiffs' claim of breach of contract is granted.

### B.  Breach of Good Faith

Plaintiffs have also asserted a claim of breach of good faith.  "Kansas law implies a duty of good faith in every contract."  *Cargill Meat Sols. Corp. v. Premium Beef Feeders, LLC*, 168 F. Supp. 3d 1334, 1345 (D. Kan. 2016).  This duty grows out of the contract obligations and "only amplifies duties and rights already existing under the terms of the agreement."  *Id.* (citing *Pizza*

*Mgmt., Inc. v. Pizza Hut, Inc*., 737 F. Supp. 1154, 1179 (D. Kan. 1990)).  This duty includes "not intentionally and purposely … do[ing] anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  *Warkentine v. Salina Pub. Sch., Unified Sch. Dist. No. 305*, 921 F. Supp. 2d 1127, 1134 (D. Kan. 2013) (quoting *Bonanza, Inc. v. McLean*, 242 Kan. 209, 747 P.2d 792, 801 (1987)).  "[I]n order to prevail on an implied duty of good faith and fair dealing theory under Kansas law, plaintiffs must (1) plead a cause of action for 'breach of contract,' not a separate cause of action for 'breach of duty of good faith,' and (2) point to a term in the contract 'which the defendant[ ] allegedly violated by failing to abide by the good faith spirit of that term.'"  *Id.* (citing *Wayman v. Amoco Oil Co.*, 923 F. Supp. 1322, 1359 (D. Kan. 1996) (quoting *Pizza Management, Inc.*, 737 F. Supp. at 1184).

Breach of the implied covenant of good faith and fair dealing is not a separate claim, but rather a "legal argument related to a breach-of-contract claim."  *Classico, LLC v. United Fire & Cas. Co.*, 386 P.3d 529, 2016 WL 7324451, *5 (Kan. Ct. App. Dec. 16, 2016).  Defendant argues that this claim is foreclosed because it has not breached a term in the policies.  In response, Plaintiffs do not point to any contract provision which was violated by failing to abide by the good faith spirit of that term. Plaintiffs argue that Defendant unilaterally changed "the mechanism of the contract regardless of the legality and consequences to the Plaintiffs."  (Doc. 161 at 11.)  Plaintiffs also argue that Defendant should be held to its previous interpretation of the policies.

As discussed, the policies unambiguously allow Defendant to adjust the claims for the 2019 windstorm in the manner that it did.  Therefore, Defendant has not breached its duty of good faith by applying the unambiguous terms of the policies.  Plaintiffs are essentially arguing that the 2019 adjustment is not fair due to Defendant's prior claim adjustment.  But, as the policies do not impose an obligation to pay for the replacement parts when the cost of repair is less than the cost of

13

replacement, the court cannot create such an obligation "through application of the implied covenant." *SOFCO, LLC v. Nat'l Bank of Kansas City*, No. 08-2366-JAR, 2009 WL 3053746, at *18 (D. Kan. Sept. 18, 2009) (quoting *Terra Venture, Inc. v. JDN Real Estate–Overland Park, L.P.*, 443 F.3d 1240, 1244 (10th Cir. 2006)).

Defendant has not breached the policies in adjusting the 2019 windstorm claim and Plaintiffs have failed to identify a term in the policies that Defendant violated by not abiding by the good faith spirit thereof.  Therefore, Defendant's motion for summary judgment on this claim is granted.

## IV.  Conclusion

Defendant's motion for summary judgment is GRANTED.  (Doc. 155.)  Defendant's motion to strike affidavit is DENIED.  (Doc. 168.)

IT IS SO ORDERED this 22nd day of May, 2020.

\_\_\_\_\_s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE

14